1  **JAMES M. CHAVEZ**
   California State Bar No. 255766
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, California  92101-5008
   Telephone:  (619) 234-8467
4

5
   Attorneys for Mr. Garcia-Villegas
6

7

8                          UNITED STATES DISTRICT COURT

9                         SOUTHERN DISTRICT OF CALIFORNIA

10                         **(HONORABLE JEFFREY T. MILLER)**

11 | UNITED STATES OF AMERICA,      )   D.C. No. 08CR1761-JM
   |                                )   Mag. Case No. 08MJ1604-AJB
12 |        Plaintiff-Appellee,     )
   |                                )
13 |              v.                )   APPELLANT'S REPLY BRIEF
   |                                )
14 | JAVIER GARCIA-VILLEGAS,        )
   |                                )
15 |                                )
   |        Defendant-Appellant.    )
16 | _____  )

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ........................................................... ii

INTRODUCTION ..................................................................... 1

I. THERE WAS INSUFFICIENT EVIDENCE TO PROVE ALIENAGE .......................... 1

   A.   No Ninth Circuit Case Has Held that Statements and Fence Climbing are Sufficient to Prove Alienage. ............................................................ 1

       1.   Statements Alone Were Insufficient to Prove Alienage. ........................ 1

       2.   The Government Must Prove Alienage Beyond All Reasonable Doubt. ............. 2

       3.   Mr. Garcia's Statements Are Not Inherently Reliable Because It Is Not Clear He Understood He Was Being Criminally Prosecuted.. ............................. 2

       4.   The Ninth Circuit Carefully, Consciously, and Clearly Refrained from Holding that Mode of Entry was Sufficient to Corroborate Statements of Alienage. ............... 3

       5.   The Facts Adduced at Trial Present a Small, but Reasonable Chance that Mr. Garcia was a United States Citizen. ........................................... 6

II.  MR. GARCIA'S STATEMENTS SHOULD HAVE BEEN SUPPRESSED. ..................... 5

   A.   Mr. Garcia's Field Statements Should Have Been Suppressed Because He Was Subject to Custodial Interrogation. ................................................ 5

       1.   Mr. Garcia's Field Statements Should Have Been Suppressed Because He Was Arrested by Agent Kim Upon Apprehension. ........................................ 5

       2.   Mr. Garcia's Field Statements Should Have Been Suppressed Because They Were Made in Response to Interrogating Questions. ..................................... 5

   B.   The Miranda Warnings Were Ineffective Because It Is Not Clear Mr. Garcia Understood He Was Being Criminally Prosecuted and Had the Right to a Free Attorney. ............. 7

   C.   An Appellate Court Reviews a Trial Courts Legal Conclusion to Suppress Statements De Novo and the Underlying Factual Findings for Clear Error. ..................... 7

III.  MR. GARCIA WAS NEVER IDENTIFIED AS THE PERSON WHO CLIMBED THE BORDER FENCE. ................................................................. 8

IV.  CONCLUSION ................................................................... 9

# TABLE OF AUTHORITIES

## FEDERAL CASES

Phillips v. Attorney General of State of Cal., 594 F.2d 1288 (9th Cir. 1979) . . . . . . . . .  6

Terry v. Ohio, 392 U.S. 1 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

United States v. Butler, 249 F.3d 1094 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

United States v. Cervantes-Flores, 421 F.3d 825 (9th Cir. 2005) . . . . . . . . . . . . . . . . . .  6

United States v. Hernandez, 105 F.3d 1330 (1997) . . . . . . . . . . . . . . . . . . . . . . . . .  1,2, 3, 4

United States v. Lopez-Alvarez, 970 F.2d 583 (1992) . . . . . . . . . . . . . . . . . . . . . . .  1, 2, 4

United States v. Olano, 507 U.S. 725 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

United States v. Ramirez-Cortez, 213 F.3d 1149 (2000) . . . . . . . . . . . . . . . . . . . . . . .  1, 2

United States v. Garcia-Hernandez, 550 Supp. 2d 1228, 1237 (S.D. Cal. 2008) . . . . . .  3

United States v. Ramirez, --- F.3d -- 2008 WL. 3271093 (9th Cir. 2008) . . . . . . . . . . . .  8

## FEDERAL STATUTES

8 U.S.C. §§ 1401-09 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

8 U.S.C. §§ 1421-59 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

8 U.S.C. § 1431 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

18 U.S.C. § 1325(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

18 U.S.C. § 3501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

8 U.S.C. § 1325 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

**INTRODUCTION**

Mr. Garcia submits this reply in response to the government's brief.

**I.**

**THERE WAS INSUFFICIENT EVIDENCE TO PROVE ALIENAGE**

**A.   No Ninth Circuit Case Has Held that Statements and Fence Climbing are Sufficient to Prove Alienage.**

The government must prove alienage beyond all reasonable doubt. Statements alone are not sufficient to do so because they are not inherently reliable. Furthermore, Mr. Garcia's statements are unreliable because it is not clear he understood he was being criminally prosecuted. Additionally, the Ninth Circuit had declined to hold that the mode of entry is sufficient to corroborate statements of entry. Finally, the facts of this case suggest a small, but real possibility that Mr. Garcia was a United States by operation of law.

**1.   Statements Alone Were Insufficient to Prove Alienage.**

As Mr. Garcia explained in his Opening Brief, the Ninth Circuit has clearly, explicitly and repeatedly held that statements alone are not sufficient to prove alienage in a criminal case. See AOB[1] at 8 (citing United States v. Ramirez-Cortez, 213 F.3d 1149, 1158 (2000); United States v. Hernandez, 105 F.3d 1330, 1333 (1997); and United States v. Lopez-Alvarez, 970 F.2d 583, 589 (1992)). The government seems to argue that the statement's are inherently reliable because the are internally consistent. Br. of Appellee at 8.Whether Mr. Garcia's statement were consistent or not, they alone were not sufficient to prove alienage despite how inherently reliable they may seem. A statement in this context can not be self-corroborating. Any such holding would be clearly erroneous because it would be contrary to the case law.(See Lopez-Alvarez, 970 F.2d at 589, stating "It has long been established that a defendant's *confession* requires some independent corroborating evidence in order to serve as the basis for a conviction." (emphasis in original))

---

[1]Appellant's Opening Brief.

1    Further, Mr. Garcia's consistent statements are not inconsistent with him being a United States
2 citizen. Someone can be 1) born in Mexico, 2) currently a Mexican citizen, 3) without any documents from
3 United States immigration authorities permitting him to remain in the United States legally (as the
4 government states) and 4) still be a United States citizen. See Br. for Appellee at 8. This is the situation of
5 many individuals who have N-600's granted awarding them their certificate of United States citizenship.

6    **2.    The Government Must Prove Alienage Beyond All Reasonable Doubt.**

7    The governments attempts to circumvent the corpus delicti rule are unavailing because they
8 erroneously conflate the alienage element of 8 U.S.C. § 1325 with the entry element. See Br. for Appellee at
9 7-8. The issue of entry, while related to that of alienage, is distinct. Surely, the government did not mean to
10 imply that it did not have to prove alienage beyond all reasonable doubt. But, to be clear, the statute of
11 conviction is titled: Improper Entry of Alien. 8 U.S.C. § 1325. It provides in relevant part: "any *alien* who . .
12 . (2) eludes examination or inspection by immigration officers . . . shall, for the first commission of any such
13 offense, be fined under title 18 or imprisoned not more than 6 months." 18 U.S.C. § 1325(a) (emphasis
14 added.) Alienage is an essential element of the crime of conviction in this case. A United States citizen could
15 not be convicted under 1325(a). It was the government's burden to prove beyond all reasonable doubt that
16 Mr. Garcia was an alien.

17

18    **3.    Mr. Garcia's Statements Are Not Inherently Reliable Because It Is Not Clear He
        Understood He Was Being Criminally Prosecuted.**
19

20    Mr. Garcia's statement's are not reliable because he did not understand he was being criminally
21 prosecuted. The government asks this Court to find his admissions of alienage are inherently reliable that
22 need no independent corroboration. This argument fails because the Ninth Circuit in similar circumstances
23 has never held this to be the law.  See e.g. United States v. Ramirez-Cortez, 213 F.3d 1149, 1158 (2000);
24 United States v. Hernandez, 105 F.3d 1330, 1333 (1997); and United States v. Lopez-Alvarez, 970 F.2d 583,
25 589 (1992)).
26    Mr. Garcia behaved as a person who believed he was going to be immediately be deported. At the
27 end of his interrogation, Mr. Garia was asked if he had anything "to add or say." BTT 8. His response was
28 "Uh, only to find out, uh how long I'm going to say." Id. As the government's witness stated at trial, the vast

2

1  majority of aliens caught illegally crossing into the United States are returned to Mexico within six to eight
2  hours. TBT 91-92. As the government states, it is not disputed that the agent *attempted* to explain to Mr.
3  Garcia that he was going to be criminally prosecuted and that his rights in criminal proceedings were
4  different than in administrative/immigration proceedings. However, it is disputed, whether the government
5  did its job of *actually* ensuring that Mr. Garcia *understood* that he was going to be criminally prosecuted and
6  had Miranda rights. Mr. Garcia's question suggests he did not understand what was happening to him.
7  Further, he did not remain silent or ask for a free attorney. Thus, his statements are not inherently reliable,
8  especially in light of the fact that he provided to the trial court a declaration stating that he would have
9  requested a free attorney had he known he was entitled to one. Further, the agent's violations of Miranda,
10 Seibert and San Juan Cruz (as discussed in Appellant's Opening Brief and below) compounded his confusion
11 and the reliability of his statements even further.
12        Further, the government cites United States v. Garcia-Hernandez, 550 Supp. 2d 1228, 1237 (S.D. Cal.
13 2008), for the proposition that post-Miranda statements alone are sufficient to prove alienage. Defense
14 counsel does not read this case to stand for that proposition. As an initial matter, it was a 1326 case and so
15 there was a prior deportation.  In Hernandez, 105 F.3d at 1333, the Ninth Circuit found a prior deportation to
16 be the most important evidence proving alienage beyond a reasonable doubt. Further, the opinion in Garcia
17 Hernandez does not cite any Ninth Circuit case law as to what is required to prove alienage, nor does it
18 discuss the issue in any depth. Finally, this opinion would not be binding on this Court.

19   **4.   The Ninth Circuit Carefully, Consciously, and Clearly Refrained from Holding that
         Mode of Entry was Sufficient to Corroborate Statements of Alienage.**
20
21       In Hernandez, the Ninth Circuit declined to adopt the position the government advocates here. The
22 Ninth Circuit stated, "we do not hold that the mode of defendant's entry is sufficient corroboration of an
23 admission that the defendant is an alien, but it provides some evidence that the post-arrest admission is
24 reliable. Hernandez, 105 F.3d at 1333. The Court could have held that the method of entry plus admissions
25 of alienage proved alienage. It did not. Id. It went on to stress that the prior deportation was the most
26 important evidence corroborating the statements of alienage. Id. If the Ninth Circuit required more proof of
27 alienage in that case, surely evidence tantamount to a deportation should be required here as well.
28       Trying to characterize Mr. Garcia's mode of entry as more treacherous than in Hernandez does not
   prove alieange. Hernandez placed no jurisprudential weight on how many fences Hernandez climbed, how

3

1 high the fences were, whether there was barbed wire, traffic, or a river on either side of the fence.105 F.3d at
2 1333. Regardless, these facts to not prove alienage, nor would they sufficiently corroborate statements of
3 alienage under current Ninth Circuit law. See Lopez-Alvarez, 970 F.2d at 589

**5.	The Facts Adduced at Trial Present a Small, but Reasonable Chance that Mr. Garcia was a United States Citizen.**

5
6 The government calls defense counsel's argument that Mr. Garcia may have been a United States
citizen by operation of law unreasonable. Br. of Appellee at 11. Yet, the government presented no evidence
7
of alienage at trial to foreclose this very real possibility. In fact, the evidence they did present regarding Mr
8
Garcia's continual presence in the nation since childhood makes this possibility that much more probable.
9
BTT 6.
10
	As the government's witness testified there are many ways to become a United States citizen besides
11
being born here. See TBT 89; See also 8 U.S.C. §§ 1401-09; and 8 U.S.C. §§ 1421-59. This is yet another
12
reason why direct evidence of Mr. Garcia's alienage, other than his own statements, was necessary. The
13
government provided no documents suggesting Mr. Garcia had ever been deported in contrast to Hernandez.
14
See 105 F.3d at 1333. Further, the government did not present any information regarding his parent's
15
alienage, other than that provided by Mr. Garcia's own statements. See TBT 51-52, 68. The government had
16
the names of his parents, yet they did not bother to look for their A-files or bring the files to court. See id.
17
The government provided no Mexican birth certificate to the court, nor any document corroborating alienage.
18
	According to the government, Mr. Garcia stated that his parents were Mexican citizens. Br. for
19
Appellee 11  However, the government presented no evidence as to whether or not either of Mr. Garcia's
20
parents was a United States citizen. No evidence was presented to show that his parents were not born
21
United States citizens despite being born in Mexico. No evidence was presented to show that they had not
22
become United States citizens.  Further, no evidence was gathered or presented as to any of these issues
23
regarding Mr. Garcia's grandparents. If any of these many possibilities in fact were true, then Mr. Garcia may
24
have been a United States citizen by operation of law - even with out him knowing it. See 8 U.S.C. §§ 1421-
25
59.  The burden in this criminal prosecution was on the government, and it did not carry it.
26
	As the government claims Mr. Garcia came to the United States as a small child. See Br. for
27
Appellee 4, TBT 51-52.  Most relevant to these facts are 8 U.S.C. § 1431, which provides:
28

      (a)    A child born outside of the United States automatically becomes a citizen of the United States when all of the following conditions have been fulfilled:
            (1)    At least one parent of the child is a citizen of the United States, whether by birth or naturalization.
            (2)    The child is under the age of eighteen years.
            (3)    The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence.

Mr. Garcia may have been a United States citizen. The government failed to dispel this reasonable possibility. The government did not carry its burden.

## II.

## MR. GARCIA'S STATEMENTS SHOULD HAVE BEEN SUPPRESSED.

**A.**    **Mr. Garcia's Field Statements Should Have Been Suppressed Because He Was Subject to Custodial Interrogation.**

    **1.**    **Mr. Garcia's Field Statements Should Have Been Suppressed Because He Was Arrested by Agent Kim Upon Apprehension.**

The government asks this Court to deny Mr. Garcia his Miranda protections by concluding that Mr. Garcia was merely subject to a Terry stop, despite the arresting agents admissions and the facts of this case. The governments arguments fail because Mr. Garcia was arrested by Agent Kim at the moment he was initially detained.

As the Ninth Circuit stated in United States v. Butler, 249 F.3d 1094, 1099 (2001) courts are to look to the "objective circumstances of the interrogation." (internal quotations and citations omitted.) The issues of probable cause and the subjective intent of the arresting officers are not determinative. Id. Rather, they are considerations for "determining someone's custodial status in the twilight zone between detention and custody. Id.

The government makes much hash about the fact that Agent Kim did not actually see Mr. Garcia climb the fence. Br. for Appellee at 14. However, Agent Kim was in constant radio contact with the RVSS operator Sergeant Gomer, who never lost sight of the individual who came over the fence. See TBT 33, 36. Agent Gomer saw two individuals coming down the primary fence and saw one individual come up and over the secondary fence. TBT 34-35. Agent Gomer reported he was able to see the person through his camera until he was taken into custody by Agent Kim. TBT 43-44. Thus, it appears to be true that Agent Kim did not

1 actually see Mr. Garcia climb the fence. However, objectively there was probable cause to arrest and, in fact, Mr. Garcia was under arrest.

The government argues that <u>United States v. Cervantes-Flores</u>, 421 F.3d 825 (9th Cir. 2005), compels this Court to find that Mr. Garcia was not in 'custody' when he made his admissions. In <u>Cervantes-Flores</u>, the arresting agent came upon the defendant forty miles north of the U.S.-Mexico border. <u>Id.</u> at 830. The agent had to chase the fleeing defendant on foot for nearly a mile through the desert. <u>Id.</u> at 828. Then, the agent had to subdue and handcuff Cervantes. <u>Id.</u> The court concluded that "use of handcuffs was justified by Cervantes' flight and [Agent] Wardlow's safety concern and thus did not convert the stop into a custodial arrest." <u>Id.</u> at 830.

Here, Mr. Garcia was handcuffed even though he did not flee. TBT 50. Here, Mr. Garcia did not need to be subdued. <u>Id.</u> Here, Mr. Garcia was arrested a few yards from the border and just minutes after he climbed the fence, while he had been under constant surveillance. <u>Id.</u> Mr. Garcia did nothing to suggest he posed a risk of flight or danger to the officer to necessitate handcuffs. Mr. Garcia was handcuffed because of general concerns about the area in which he was arrested. TBT 74. The only individualized reasons provided by the arresting agent for handcuffing Mr. Garcia were 1) his shirt was untucked and 2) he was bleeding due to cuts from the concertina wire. <u>Id.</u>

These differences distinguish his custodial status from <u>Cervantes-Flores</u>. Mr. Garcia was handcuffed because he was under arrest. He had been observed continuously from the moment he was first seen coming over the fence until he was taken into custody. <u>See</u> TBT 33, 36. While the casebooks may be full of scenarios where individuals were not free to go, but not under arrest, this is not one of them. See Br. for Appellee at 13. This was no <u>Terry</u> stop. <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), Any and all statements taken in the field should have been suppressed because of violation of <u>Miranda</u>.

**2.   Mr. Garcia's Field Statements Should Have Been Suppressed Because They Were Made in Response to Interrogating Questions.**

The government argues there was no <u>Miranda</u> violation because Mr. Garcia's statements were voluntarily made. In support of this argument, the government relies on one federal habeas corpus case reviewing a California state court conviction from thirty years ago. <u>Phillips v. Attorney General of State of Cal.</u>, 594 F.2d 1288 (9th Cir. 1979). This case is factually distinguishable as it involves the detention of an airplane due to suspicion of drug trafficking. Further, it is legally distinguishable because of its procedural

posture and the now outdated state law that it applied. Further, the government does nothing to reconcile the fact that in federal cases the issues of voluntariness and Miranda are distinct inquiries. See 18 U.S.C. § 3501

For all of the reasons stated in appellant's opening brief, Mr. Garcia's questions were made in response to interrogating questions. Further, Mr. Garcia did not provide any information to Agent Kim until after Mr. Kim began his questioning. TBT 51. Regardless of whether the statements were voluntary, Miranda was violated and the statements should have been suppressed.

**B.    The Miranda Warnings Were Ineffective Because It Is Not Clear Mr. Garcia Understood He Was Being Criminally Prosecuted and Had the Right to a Free Attorney**.

For all of the reasons stated above, it is not clear that Mr. Garcia understood that he was being criminally prosecuted.  Thus, it is equally unclear, if not more so, that he understood, as required under Miranda, that he had the right to a free attorney. Mr. Garcia submitted a declaration to the trial court stating he would not have answered questions during the interrogation if he had known he had a right to a free attorney. The government fails to address this point.

Mr. Garcia's confusion was created by the poorly translated recitation of his Miranda rights. The Spanish verb *designar* as the Magistrate Judge put it was not the "best term." TBT 28.

The confusion was compounded by the San Juan Cruz error. At no point did the interrogating officers specifically tell Mr. Garcia that he should disregard his administrative rights or that they no longer applied. See TBT 96.

Finally, as discussed below and in Appellant's Opening Brief, the statements should have been suppressed for violations of Miranda under the more recent Seibert decision.

Mr. Garcia's post-Miranda statements should have been suppressed.

**C.    An Appellate Court Reviews a Trial Courts Legal Conclusion to Suppress Statements De Novo and the Underlying Factual Findings for Clear Error.**

The plain error standard does not apply because Mr. Garcia repeatedly moved to suppress all statements both before and during trial. He did not relinquish or forfeit the Seibert argument he raises here. Upon review of the record, it appears as if the government is correct that among the dozen or so cases Mr. Garcia cited, he did not specifically mention the case name or citation for Seibert. Yet, in pre-trial motions, Mr. Garcia moved to suppress all statements because they were taken in violation of the Fifth Amendment, Miranda and its progeny. (See Motion to Suppress Statements filed June 4, 2008 and Motion to Suppress

1 Statements filed June 9, 2008.) Further, Mr. Garcia moved to suppress statements by oral motion before
2 trial. TBT 6-29. Finally, Mr. Garcia moved to suppress statements at trial. (TBT 51, 84, 102.)
3    Plain error does not apply because the government cites no case requiring Mr. Garcia to forfeit his
4 rights to rely on a particular case simply because he did not cite that specific case below. Even if the plain
5 error standard were applied, the statement should be suppressed. As the government stated, "relief is not
6 warranted unless there has been: (1) error, (2) that was plain, and (3) that affected substantial rights. (See
7 Brief for Appellee at 20 quoting United States v. Ramirez, --- F.3d ---, 2008 WL 3271093. (9th Cir. 2008))
8 First, for the reasons mentioned in Appellant's opening brief, it was error in violation of Seibert to admit the
9 statements. (See Appellant's Opening Brief at p. 15-17.) Second, this error was plain as even the trial court
10 itself felt compelled to examine the interrogating agent as to how he concluded Mr. Garcia was an alien even
11 before Mr. Garcia admitted as much during the interrogation. See TBT 96. The court stated "Let me ask you
12 a question. What's the source of this information at page three of nine, line 14 that led you to conclude he
13 was not a citizen of the United States at that point in time?"[2] Id.  Third, the error was prejudicial and affected
14 substantial rights because the statements were indispensable proof to the essential element of alienage.
15 Finally, insufficient evidence to prove an essential element of a crime "seriously affect[s] the fairness,
16 integrity [and] public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 736 (1993)
17 (internal quotation marks omitted). Thus, the court's error in admitting the statements was plain.

### III.

### MR. GARCIA WAS NEVER IDENTIFIED AS THE PERSON WHO CLIMBED THE BORDER FENCE.

21    Mr. Garcia was never identified as the person who committed the crime on May 21, 2008. His
22 identity was not proven beyond a reasonable doubt. The government quotes, emphasizes, and relies on one
23 line of the transcript where Agent Kim said, "that's where I met the Defendant, Mr. Garcia-Villegas." (TBT
24 23.) However, the government does not identify anywhere in the transcript where Agent Kim was
25 specifically asked whether he could identify a person sitting in the courtroom as the person he arrested on
26 May 21, 2008.  He was not asked to describe the physical characteristics of anyone in the courtroom, nor was

---

[2] The court concluded that the source was a form from which the agent was reading. TBT 97. Defense counsel is not aware of any law that would suggest reading from a form would be an exception to Miranda or Seibert.

1 | he asked to identify any individual's clothing. Further, neither the government attorney, nor the court
2 | remarked for the record that the witness had identified Mr. Garcia. Not once was Agent Kim asked to
3 | identify the person he arrested as any one of three individuals sitting at counsel table, which included Mr.
4 | Garcia, Mr. Ellis, and Mr. Chavez.

## IV.

## **CONCLUSION**

For the foregoing reasons, Mr. Garcia respectfully requests that this Court vacate the magistrate court's judgment of conviction and imposition of a sentence of probation.

Respectfully submitted,

DATED: September 9, 2008

*s/JAMES M. CHAVEZ*
**JAMES M. CHAVEZ**
Federal Defenders of San Diego, Inc.

| | |
|---|---|
| 1 | **JAMES M CHAVEZ** |
| | California Bar No. 255766 |
| 2 | **FEDERAL DEFENDERS OF SAN DIEGO, INC.** |
| | 225 Broadway, Suite 900 |
| 3 | San Diego, California  92101-5008 |
| | Telephone: (619) 234-8467 |
| 4 | James_Chavez@fd.org |
| 5 | Attorneys for Mr. Garcia-Villegas |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JEFFREY T. MILLER)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.:08CR1761-JM |
| | ) | |
| Plaintiff, | ) | |
| | ) | PROOF OF SERVICE |
| v. | ) | |
| | ) | |
| **JAVIER GARCIA-VILLEGAS**, | ) | |
| | ) | |
| Defendant. | ) | |

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of her information and belief, and that a copy of the foregoing document has been served via CM/ECF this day upon:

**GEORGE MANAHAN, Assistant United States Attorney**
George.Manahan@usdoj.gov

Dated: September 9, 2008                *s/ James Chavez*
**JAMES M. CHAVEZ**
Federal Defenders
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 234-8467 (tel)
(619) 687-2666 (fax)
email: James_Chavez@fd.org